UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAUNDRA K. NEAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 1:12-cv-885-WTL-TAB |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Saundra K. Neal requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The Court rules as follows.

### I.     PROCEDURAL HISTORY

On September 1, 2005, Neal filed an application for disability insurance benefits, alleging disability beginning March 15, 2005, due to degenerative disc disease of the cervical spine with stenosis, myositis of the right shoulder, chronic low back pain of undetermined etiology, bilateral hip bursitis, depression, and anxiety. After denials at the initial and reconsideration levels, Neal filed a request for a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 29, 2008. On June 24, 2008, the ALJ issued a decision denying Neal benefits. On January 29, 2009, the Appeals Council remanded the case for another hearing before another ALJ.

A hearing was held before ALJ James R. Norris on July 29, 2010. Neal appeared and was represented by an attorney. Also appearing and testifying were medical experts Richard Hutson, M.D., and Jack E. Thomas, Ph.D., and vocational expert Gail K. Corn. On October 19, 2010,

ALJ Norris issued a decision denying Neal benefits. The Appeals Council upheld the ALJ's decision and denied the request for review on May 16, 2012. This action for judicial review ensued.

## II.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision. While he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1177.

### III.   MEDICAL EVIDENCE

Neal was 42 years old at the time of her alleged onset date of March 15, 2005. She has a high school education. Her employment history includes past relevant work as a semi-truck driver, assistant manager, and file clerk. On application for benefits, and on subsequent appeals, Neal alleged problems with degenerative disc disease of the cervical spine with stenosis, myositis of the right shoulder, chronic low back pain of undetermined etiology, bilateral hip bursitis, depression and anxiety.

In April 2005, Neal was suffering from multiple somatic complaints including thoracic sensory level numbness, dysesthesias related to status post breast implant removal, depression, panic attacks, weight loss, and some cognitive slowing.

An MRI of the thoracic spine taken on April 13, 2005, revealed mild upper thoracic spinal kyphosis. An MRI of the cervical spine taken on May 3, 2005, revealed exaggerated

3

cervical lordosis, decrease in the height of the vertebral bodies of C5 and C6 and disc osteophyte complexes and facet hypertrophy at multiple levels, and a central and left paracentral disc osteophyte complex that appears to be impinging the cord on the left side.

A chest x-ray taken July 19, 2005, revealed possible early chronic obstructive pulmonary disease ("COPD"), very early degenerative changes in the midthoracic vertebral area, and very slight degenerative osteophyte formation in the mid and lower lumbar vertebral area. Also on July 19, 2005, Neal complained of depression, chest wall pain, and fatigue.

On September 30, 2005, Dr. Kozarek wrote a letter to Social Security stating that he did not know the etiology of Neal's chest wall pain, "but whatever the cause she certainly is markedly limited and [he did] not consider her capable of engaging in gainful employment in the near future."

On October 13, 2005, Dr. Corcoran completed a Physical Residual Functional Capacity Assessment regarding Neal's abilities. He opined that Neal could lift and/or carry twenty pounds occasionally, ten pounds frequently, had unlimited ability to push and/or pull, and could sit, stand, and/or walk about six hours in an eight-hour workday. She could never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She would need to avoid even moderate exposure to hazards.

On October 17, 2005, Dr. Kladder completed a Psychiatric Review Technique form, finding that Neal had no severe mental impairments. He found that she had mild difficulties in maintaining social functioning.

On October 17, 2005, Neal's diagnoses were tendonitis in her right shoulder, chronic thoracic sprain, and ischial seat bursitis on the right. She was given a Depo-Medrol injection in

her shoulder. X-rays of Neal's back taken on December 2, 2005, revealed chronic thoracic sprain and chronic lumbar strain.

Throughout 2006 and 2007, Neal sought treatment for chronic thoracic and lumbar sprain, adhesive capsulitis of her right shoulder, tarsal tunnel syndrome bilaterally, rhomboid myositis bilateral, fibromyalgia, degenerative disk disease of the thoracic spine, ankylosing spondylitis, and subacromial bursitis of the right shoulder.

On examination on August 22, 2006, Dr. Bishop suspected that Neal had metastatic disease to her liver. A liver biopsy revealed multiple hepatic lesions, but no definitive diagnosis was made.

On June 19, 2007, Neal returned to Dr. Marshall in follow-up for her back and shoulder, which she continued to have difficulties with, and complained of memory problems. Dr. Marshall determined that Neal suffered from chronic thoracolumbar strain, adhesive capsulitis in her right shoulder, and intercostals neuritis in her right rib cage.

On June 28, 2007, Dr. Marshall completed an Arthritis Residual Functional Capacity questionnaire for Neal. His diagnoses included adhesive capsulitis in the right shoulder, history of melanoma, bilateral shoulder tendinitis, and rule out ankylosing spondylitis. The doctor identified a poor prognosis, with symptoms including neck, back, and shoulder pain, stiffness, fatigue, and insomnia. He opined that Neal suffered from reduced range of motion in her shoulders and back, joint deformity, impaired sleep, weight change, impaired appetite, abnormal posture, tenderness, trigger points, and muscle spasm. Dr. Marshall opined that Neal's pain was frequently severe enough to interfere with attention and concentration, she suffered anxiety, and she was incapable of even low stress jobs. Dr. Marshall opined that Neal could sit and stand for twenty minutes each at one time before needing to change position. She could sit, stand, and

walk for about two hours each total in an eight-hour workday, and she would need to walk approximately every twenty minutes for five minutes. She required a job that would permit shifting positions at will and taking daily unscheduled breaks lasting between fifteen and twenty minutes. She could never carry more than ten pounds, rarely lift and carry ten pounds or less, rarely twist, stoop, bend, and climb stairs, and never crouch or climb ladders. Dr. Marshall projected that Neal would likely be absent from work more than four days per month.

On August 12 and 13, 2008, Neal attended a functional capacity evaluation at the request of Dr. Marshall. The examiner noted significant limitations of cervical, thoracic, and lumbar range of motion, stability (strength), endurance, and posture. Neal also suffered from peripheralizing pain from the thoracic/scapular region to the anterior chest wall, indicating nerve root involvement. She had poor right shoulder girdle stabilization and poor tolerance for static postures in sitting and standing for greater than five minutes at a time. She had a complete inability to perform waist to overhead lifting, elevated work, crouching, kneeling and climbing ladders. She could rarely front carry, right carry, left carry, sit, stand, walk, and climb stairs. Overall, the examiner concluded that Neal's functional work abilities did not fall within any category of the USDOT physical demand levels. Specifically, referring to the FCE Grid, Neal's sitting ability showed a significant limitation that did not match the sedentary level requirement for sitting, and her inability to lift weights above five to ten pounds beyond the rare frequency displaced her from all other categories.

On December 2, 2008, Dr. Marshall completed a form giving his medical opinion regarding Neal's ability to do work-related activities. He opined that she could lift and carry less than ten pounds on an occasional or frequent basis. She could sit, stand, and walk less than two hours in an eight-hour day. She needed to periodically alternate sitting, standing, or walking to

relieve discomfort, and Dr. Marshall noted that she could sit and stand for five minutes each before changing position. She needed to walk around every five minutes for five minutes at a time. Neal required the opportunity to shift at will from sitting or standing/walking and lay down at unpredictable intervals during a work shift. She could occasionally twist and climb stairs, but could never stoop, crouch, or climb ladders. Reaching, handling, fingering, and pushing/pulling were all affected by her impairments, although feeling was not. She needed to avoid even moderate exposure to humidity, and all exposure to extreme cold, heat, wetness, and hazards. Dr. Marshall identified the following medical findings in support of Neal's limitations: limited motion in her spine and right shoulder, a positive HLA 27B antigen, and the functional capacity evaluation.

In 2008, 2009, and 2010, Neal sought treatment for ankylosing spondylitis, chronic thoracolumbar strain, adhesive capsulitis of the right shoulder, and rhomboid myositis of the right shoulder.

## IV.  THE ALJ'S DECISION

Applying the five-step analysis, the ALJ found that Neal was not under a disability, as defined in the Act, from March 15, 2005, through June 30, 2010. At step one, the ALJ found that Neal had not engaged in substantial gainful activity from March 15, 2005, through June 30, 2010. At step two, the ALJ determined that Neal suffered from the following severe impairments: degenerative disc disease of the cervical spine, adhesive capsulitis of the right shoulder, ischial bursitis, and chronic back pain. The ALJ found Neal's depression was non-severe; he also found no diagnosis of ankylosing spondylitis or fibromyalgia. At step three of the analysis, the ALJ determined that none of Neal's severe impairments met or medically equaled a listed impairment.

At step four, the ALJ concluded that Neal retained the residual functional capacity ("RFC") to perform sedentary work as follows: lifting no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; sitting for six hours during an eight-hour work day; walking and standing for two hours during an eight-hour work day; and using hands and fingers for repetitive hand-finger actions. Neal required a sit/stand option. As long as she did not leave the workstation, she would be allowed to stand up to five minutes out of every hour, which did not have to be consecutive. She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; but no climbing of ladders, ropes, or scaffolds; avoid concentrated exposure to cold, heat, wetness, humidity, vibration, and avoid heights or hazards.

The ALJ concluded that, given Neal's RFC and considering her age, education, and work experience, she was capable of performing work that existed in significant numbers in the regional economy, including such representative occupations as information clerk, general office clerk, and assembler. Therefore, the ALJ determined at step five that Neal was not disabled as defined by the Act.

## V.    DISCUSSION

The errors alleged by Neal center on the ALJ's assessment of her chronic, severe pain. Specifically, Neal argues that the ALJ erred in when he rejected her subjective statements as to her limiting pain, failed to assess the impact of that pain on her mental abilities, and overlooked the medications Neal has tried to use to manage her impairments.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, 20 C.F.R. § 404.1529(c); SSR 96-7p, and justify his finding with specific reasons.

*Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Id.*; SSR 96-7p. At the same time, district courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.' " *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart,* 36 F.3d 751, 758 (7th Cir. 2004)).

At the hearing, Neal testified that she is always in some level of pain. Neal uses a special cushion for sitting to lessen the pain from her hip problems and uses a cane when she goes out in public. She sleeps semi-reclined with three pillows, usually on the couch because she has difficulty lying flat. She explained that when she runs errands, she takes breaks in her vehicle by lying in the seat in a reclined position. She takes breaks to lie down every day to take pressure off her hips and buttocks. She testified that she could stand for "maybe ten minutes at the most," if she can rotate her hips and do stretches while standing. Sitting is likewise limited to ten minutes at a time, although she can sit for a longer period of time in a recliner.

Neal testified that she undergoes spinal injections "every few months." They are expensive and her insurance does not cover the injections, so she does not get them as often as needed. She approximated that she had undergone ten such injections. The injections themselves are painful, as they penetrate into the joint, and Neal explained that the pain from the injection is so strong that one might pass out. She explained that she often questions why she got the injection for the first few days after its administration due to pain at the injection site, but that eventually the pain precipitating the injection is numbed, although it never goes away. Although sometimes the injections do not work, when they do, the pain is relieved for "a couple weeks."

After rejecting the functional limitations found by Neal's treating physician, Dr. Marshall, as "inconsistent" with each other and the doctor's physical examinations,[1] the ALJ considered Neal's subjective reports of pain, as indicated by SSR 96-7p. The ALJ ultimately rejects the alleged severity of Neal's pain on the ground that it is "curious . . . that the claimant has not sought any other treatment modalities such as a pain clinic or any further physical therapy. Even when her pain allegedly escalated, no adjustment was made in her medication or exercise regimen." Tr. at 28.

The record evidence indicates that Neal carts about a cushion for sitting, sleeps in a recliner, lies down in her car while running errands, has attempted numerous pain-management medications, was prescribed a TENS unit, and has undergone at least ten painful injections. Furthermore, the ALJ himself recognizes that Neal was prescribed cervical traction and shoulder girdle stretching exercises. Given this evidence, the Court must conclude that the ALJ's credibility determination is patently wrong. It is not at all "curious" that Neal has not sought out "other treatment modalities" – she has, and she continues to do so. Putting this erroneous determination aside, then, the ALJ's only reason for discrediting Neal's allegations of severe pain is that her allegations are inconsistent with the objective medical evidence, and that is insufficient.

Neal also contends that the ALJ erred when he did not consider the many medications she has taken in the past. A long list of tried-and-failed medications does not necessarily speak to the severity of one's pain. However, it does speak to Neal's persistence in seeking treatment, which, when coupled with the other, non-medication pain management measures she uses, is indeed

---

[1] Neal does not assert any error as to the ALJ's rejection of Dr. Marshall's opinions.

some indication of the hardship this pain causes.[2] Accordingly, the ALJ's decision must be reversed and remanded on these bases.

Turning to Neal's remaining argument, the Court finds no error. Neal contends that the ALJ failed to assess the impact of her pain on her concentration, cognition, and reduced motor reaction time. However, Neal has not pointed to any evidence in the record suggesting that her pain impacts her abilities in this way.

## VI. CONCLUSION

As set forth above, the ALJ erred in his assessment of Neal's pain. The decision of the Commissioner must therefore be reversed and remanded for further proceedings consistent with this Entry.

SO ORDERED: 08/19/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.

---

[2] The Court notes that not all the medications Neal lists are for the treatment of pain.

11